I have been advised that all lawyers and and arguers this morning are present and ready to begin so I'm going to dispense with reading the calendar and we will begin with the first case which is United States v. Baker. Good morning your honors. The rule in this court is that a conviction can be upheld based upon the testimony of a single accomplice alone but when that single accomplice is so inherently unbelievable that even the prosecutor urges the jury not to accept her testimony unless it is confirmed by other evidence and as I hope to show during this argument it is not confirmed by other evidence then I submit that rule has to bend to the dictates of due process. Is there anything in the record that indicates that the testimony of the witness was incredible, couldn't have happened or is your argument that the witness is simply so impeached that no reasonable jury could have believed the testimony? You know I've struggled with that question and I think some of it may be that it's impossible I don't know that's a pretty strong word but let me give you the example I've been thinking of because I have been struggling with that question and that is Kennedy testified that Baker always brought the drugs to her house that's what she said. Now Baker was wearing a GPS monitor throughout the whole time on his ankle and in March they got a GPS monitor on his phone. If he always came to her house when he sold to the drugs why is there no evidence of him at her house? Why was he never tracked to her house? Why was he never tracked to anywhere where you know they could have conducted a drug deal? Now is that impossible? No but it's it skirts the line I think between. Was there evidence to there you're simply saying they didn't present corroborating evidence in the form of the GPS information? There's not corroborating evidence but in a sense I believe it almost contradicts it because if you have a GPS and and when they got the GPS it was precisely to check his whereabouts so if they had it it sort of does contradict because he would have been there if she said he was there and they never. You're talking about the absence of it then? The absence yes. So there are other evidence that was corroborating surveillance evidence Mr. Baker was was there when she said that he was there? Well the wiretaps. I'm going to turn right into then what I think is the the the key to this case is there confirmation or not? Okay first I just before I answer what there was I just want to make sure we understand what there wasn't and there was no evidence of Baker having drugs on his person in his car and I don't know why they didn't search his house. There's no intercepted phone calls between Baker and anyone else as I point out they never see Baker with Kennedy giving him the drugs and the CI who is a drug dealer with ties to the drug community he didn't give up Baker he said I don't know from Baker selling drugs and he only mentioned Candy Kennedy. There's a lot of ways to confirm a witness's testimony and we've seen that in a lot of cases. So what do they claim? Is there a requirement that a witness's testimony be confirmed however? I mean I was there's corroborating evidence which may not be confirming of the testimony but it's generally as you know left to the jury to evaluate credibility. And that's where I was going to begin and I think that you have circumstances where the witness is where the I I've been doing this a while and I don't think I've seen a case where the prosecutor tells the jury if my witness my only witness who implicates the defendant tells you that the courtroom is closed you better go check it yourself. Don't trust her. Confirm it. Now I'm not sure what the difference is between confirming and corroborating but I don't think there was evidence of either and I'm going to go through that. There's seven there are five controlled buys and there are two that didn't happen. One on the day of the sale and one theoretical conversation in April. So for two of those buys if you look at the government's brief they don't even attempt to show any confirming evidence. There's no phone calls, nothing that they point to, no presence at the scene, nothing which leaves us now with five. Okay there's two more where as Judge Chin said surveillance shows that Baker is in the mall where Kennedy is conducting the transaction. He drove her to the mall. Kennedy testified if we can believe her that she didn't have a car. But driving someone to the scene of the crime as this court has said over and over again is not proof of participation in a conspiracy nor his presence at the scene of the crime and there's nothing to show that he agreed to supply her with drugs when he agreed to drive her to the mall. Which leaves us now with three transactions. Two, the confirmation or corroboration relies solely on missed calls from a call log. I'll get to them in a minute because I want to get to what I think the government thinks is the smoking gun in this case. In May they obtained a wiretap on Kennedy's phone. There are a hundred and sixteen I believe phone calls between Kennedy and Baker during that time period and at least a hundred that are actually connected that don't go to voicemail. From a hundred and sixteen phone calls the government comes up with two where what do they have? Kennedy and Baker they're not talking in code. All you have to do is compare the phone calls with the CI to the phone calls with Baker to see the difference between when they're talking in code and when they're not talking in code. There's no context to those phone calls. There's nothing that precedes or follows that phone calls that shows what it is that they're really talking about. The May 11th phone call you have the CI asking Kennedy in one call that he wants 64 grams and then six minutes later you have a phone call between Kennedy and Baker in which Baker says when does he need it? I can make it happen. That's what I think the government thinks it's the smoking gun. That's what I want. Isn't it a smoking gun? No, I don't think it is. I think it can be undercut. I think it's really a slender virtually non-existent thread. First of all we only have she starts off by saying Tia wants to know what's up. Now she had five opportunities to tell the cops to tell the grand jury that Tia was her purchaser beforehand and yet it's only on the standard trial that she says Tia is her purchaser. Well how did Baker know Tia was her purchaser? This is a person they both knew. I don't know what Tia wants to know what's up. In response to that he says she says when can we meet and he says we can. It might be perfectly innocent but when you put it in context isn't it reasonable for the jury to find that indeed this was a drug transaction? So let's assume that's because I don't think it is but let's assume it's the case and this is I think the key problem with this case. That all relates to the May 20th sale. The May 20th sale involved fentanyl alone and the jury found that it was not reasonably foreseeable that Baker joined a conspiracy that involved fentanyl. Do I take it from your allocation of time that you don't think very much of your argument with respect to the jury the jurors question? No I just you know I have to focus on I think there's the the argument I think it's a strong argument and I think the problem there I'll just say one word I see my red light is on is I think I want to make clear that the problem there is not that he didn't hold a hearing where evidence might not be admissible. The problem here is he didn't allow counsel to find out whether there was something really wrong here and this was a weak case and . . . Would you agree that the threshold with respect to the racial prejudice exception to jurors testimony that was set out by the Supreme Court and Peña Rodriguez that threshold is not met in this case? Oh I would agree that it's not met yet and that's why I think he should have at least been allowed to speak to the juror. Isn't that necessarily then the threshold for inquiring of the jurors? I would disagree I'm sorry your honor I would disagree because I think that's the threshold for the admission of evidence under 602. But this is . . . This is just for the inquiry what if he talked to that juror and that juror said I knew he was guilty from the beginning because of . . . and then said something racial. We don't know that because he never got a chance to talk to the jury. This is post verdict right it's not it's not an inquiry that goes on during the trial where something comes up and the jury is still there there's been no verdict. Once there is a verdict isn't the standard higher because the only result of the inquiry could be to hold an evidentiary hearing for the purposes of vacating the verdict. And there are certain things that are admissible under rule 602 if you hold an evidentiary hearing but if you can't find out if a juror comes to you remember he didn't go to the juror and says there were a lot of things going on here including premature deliberations and he can't even speak and what's the harm I mean he he was willing to do it before the judge before the government just talk to the juror and find out what it is because maybe it was something that would really undercut the viability of what is a really weak verdict in my mind in this case. So no I don't think it's a throwaway argument your honors and I reserve some time for rebuttal. May it please the court, Karina Schoenberger for the United States. The district court's judgment should be affirmed both challenges to Mr. Baker's conviction lack merit. With respect to the evidence as the government lays out in its brief the jury . . . Can I just ask you just following up what my colleague was inquiring about what what do you perceive as the standard for whether an inquiry into a jury an allegation about jury misconduct should be undertaken post verdict? With respect to a potential source of racial animus or just generally? Generally. Well I think that it's it's true that rule 606 B the no impeachment rule doesn't set forth the standard for talking to jurors but it does set forth the standard for what is admissible to have a hearing to see if you need to seek a new trial or something similar. But the case law makes very clear that the district court has the power and indeed the duty to oversee any post verdict interrogation of jurors and so the district court here acted within its discretion in deciding the two issues that this juror raised in its email wouldn't be admissible for the purposes that Baker wants them for and so in that case there's no reason to talk to him further. So it's the the threshold there is considered on a case-by-case basis but . . . I guess I don't understand that reasoning. What would be the basis for concluding that further inquiry would be futile say with regard to the comment I knew he was guilty from the very moment I laid eyes on him. We don't know why the juror said that. That's true and just to be clear it wasn't the juror who emailed defense counsel who said that. He had overheard another juror after the verdict say that before he was sworn in he believed that the defendant was guilty. So what that would require would be approaching a juror who had not volunteered information to ask about his mental processes and what motivated his vote and those are things that are explicitly prohibited by Rule 606B and the general policies that are in place to protect jurors individually and to protect the jury system more generally. There's numerous cases that talk about that. The Supreme Court case Tanner that the government cites into its brief acknowledges that yes when you . . . . . . Is there anything in the record as to who the other juror was? Was it a juror who was impaneled or was it a juror who . . . prospective juror? If I understand the email correctly it was a juror who was impaneled and after the verdict came out said the first time I saw him I thought he was guilty. It was the district court who inserted the idea that that was based on his appearance. That's possibly what he was referring to. Maybe he was talking about the defendant's demeanor. Maybe he was even talking about the fact that it was someone sitting in the defendant's chair in federal court. But all of that happened before he was sworn in so it was before he was instructed about keeping an open mind about the presumption of innocence and jurors are different things. So even there, even if the juror accurately reported what he overheard, it doesn't necessarily indicate any sort of bias. It certainly doesn't indicate any sort of racial bias of the type that's described in the Pena-Rodriguez case. If an evidentiary hearing were held and the juror who reported the comment, let's say juror number one, of the other juror, juror number two, and juror number two were called at the post-verdict hearing, would that testimony then of necessity be excluded? Yes, because it would be about that juror's internal mental processes about what motivated his vote to convict. Unless it fell within the exception for racial prejudice, but then it would have to be a clear showing, the comment would have had to have been a clear showing. Yes, and it would have to show racial bias that's overt and that was a significant motivating factor in his vote to convict. And this falls far short of that. Again, we don't even get to the level where this is shown to be any sort of racially driven comment at all. And to meet those other standards, it certainly doesn't meet there. In your letter to the district court, you said, don't let the defense counsel talk to these jurors. If there is to be any post-verdict examination, you judge should conduct the hearing. In retrospect, do you think it would have been more prudent for the government to say, judge, hold a hearing, find out what was going on? I'm not sure that the government erred in what it asked of the court. The court did have discretion to hold a hearing, and if the court had chosen to do that, that may have been within its discretion. But that doesn't mean that it was an abuse of its discretion to deny the application to interview the juror who sent the email to the defense here. If the juror had said, juror number two had said, there was nothing racial about my comment, but I looked at the defendant and thought that he was guilty from the outset, and nothing could have changed my mind, would that testimony then just get left on the record because it would be inadmissible under the rules of evidence? Yes, potentially, and this is what the Tanner case gets to, that when you scratch the surface of any verdict, it's possible that you might come up with some sort of juror misconduct that could lead to seeking a new trial, but . . . Well, I think in Tanner, there was evidence presented that the jurors by affidavits, if I'm remembering correctly, the jurors said we were drinking, I felt bad, that we were not listening to the evidence, that we were not performing our . . . That we had drugs and we drank cocaine, I think. But I still come back to this idea of futility. I mean, I would have said that maybe the inquiry here fits within our case law, talking about what the jurors said about holding a hearing, and that in our language, it's been things like a clear, substantial, non-speculative basis for proceeding further. Is that not the case law that I should be looking at to consider whether the district court abused its discretion in not holding a hearing? Well, I don't think that even the defense was arguing that they'd met that threshold. At that point, the defense was not saying that they had made the clear showing that it was necessary to have a hearing. They were just making an application to interview the jurors. Essentially, what the judge was saying, that you can't ask him questions about the two things he raised because that goes into internal juror matters. At that point, juror number ten, the one who sent the email, is similarly situated to every juror on the panel because the two things he's raised can't be talked about. Then, it's just a matter of mining for more information to see whether there's any potential misconduct that might be the basis of a new trial. That, again, is one of the reasons that the no impeachment rule is in place, is to prevent that type of undermining of a final verdict. Unless I can answer any further questions, we would just ask that the jury be informed. I'm turning to two things. First of all, the email may not have been explicit about what it was that convinced this juror that the defendant was guilty from the get-go. That's why an inquiry was needed because, yes, it could have been that he was sitting in the defense chair, but it also could have been something that we now know is something that we can inquire into. Just cutting off the inquiry before you find out that crucial piece of information is part of the wrong here. The second part is there are certain things you can inquire about. Premature deliberations involve something that is not the juror's thought processes. It's something that they've done in violation of their rules. If you inquire of the juror, what did you mean when you say they talked about it all the time? Maybe he would just say, oh, we just chatted about it at lunch, or maybe he would have said, somebody brought in something from the Internet. Somebody brought in something about Baker's criminal history. We were talking about this all the time. We can't know because the judge didn't allow an inquiry. We're moving to the evidentiary hearing before the inquiry. I still don't see where the government has told us what the harm would have been in allowing this inquiry. Maybe the inquiry would not have led to something, but it certainly . . . Harms are all laid out in Tanner and in its progeny. If once you begin to open up the verdict after the verdict is returned, it will lead to questioning all verdicts, harassment of jurors, questioning finality of the judgments as opposed to the kind of discretion that's afforded to district court judges before the verdict is returned. When you can examine the jurors, when you can call alternate jurors, when the verdict is not itself at issue. And that is true, but this was one . . . Inquiring of this one juror who volunteered, he came forward, he wasn't intruded upon. He was troubled. He clearly was troubled. He had reason to be troubled. Wasn't it about six weeks after the verdict that . . . I don't think we know enough about human nature to know how long he may have been struggling with this verdict. It was, but he obviously was thinking about it long enough to send an email to defense counsel. Clearly, it troubled him. Do you think that the standard to initiate an inquiry after the verdict is different than . . . different from the standard before the verdict is returned? No, I don't. I think just initiating the inquiry, if you have evidence of misconduct that could lead to evidence that could be admissible in undercutting the verdict, you should have the inquiry. I think it should be the same standard. It may be different circumstances. It may be easier logistically when the jury is in there to bring them into the judge's chambers and inquire of them. I've certainly been involved in cases like that. I think the standard should be the same. If a juror has come forward with not incredible allegations that suggest that there was misconduct that might be admissible at a hearing and might, in fact, be really bad misconduct, inquire. Before the verdict is returned, Rule 606 doesn't even apply. It kicks in only when there's an inquiry into the verdict. The kinds of high evidentiary standards that are talked about only kick in after the verdict. They don't kick in for the judge's inquiry of the jury while the trial is going on. They kick in for a good purpose because you're talking about an evidentiary hearing. Again, I would like to distinguish, I think there's a distinction between an inquiry with a willing, a volunteering juror who wants to tell and the judge should, I think, the judge has a duty to hear him out and find out if there was any reason for him to look further into what I think was a pretty weak verdict in this case, a verdict that was not supported by sufficient evidence. Thank you, Your Honors. I appreciate it. Thank you both. We'll take the matter under submission.